# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Dr. Erik Von Kiel, a/k/a "Dennis Fluck" | ) Case No. |
| | ) 14-178 - M - file |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | |

FILED
FEB 28 2014
MICHAEL E. KUNZ, Clerk
By____M.A.____Dep. Clerk

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  approximately 2001 through 2013   in the county of              Lehigh              in the

      Eastern      District of      Pennsylvania      , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C., Section 371 | Conspiracy to defraud the United States |
| 26 U.S.C., Section 7201 | Attempt to Evade and Defeat Federal Taxes for tax years 2008 through 2012. |

This criminal complaint is based on these facts:

See attached affidavit

☐ Continued on the attached sheet.

_____
*Complainant's signature*

Joseph Carl, Special Agent, IRS
*Printed name and title*

Sworn to before me and signed in my presence.

Date:        02/28/2014

_____
*Judge's signature*

City and state:              Philadelphia, PA

U.S. Magistrate Judge Elizabeth T. Hey
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT WARRANT

I, Joseph Carl, being duly sworn, state the following:

1) I am employed as a Special Agent with Internal Revenue Service-Criminal Investigation (IRS-CI), and have been so employed since July 2012. I am assigned to the Philadelphia Field Office. My responsibilities include the investigation of possible criminal violations of Internal Revenue Laws (Title 26, United States Code), the Bank Secrecy Act (Title 31, United States Code), and specific violations of the basic US criminal code (Title 18, United States Code), including violations pertaining to Money Laundering, false claims on the revenue of the United States, conspiracy and related offenses.

2) I have successfully completed the Criminal Investigators/Special Agents training courses at the Federal Law Enforcement Training Center. In these programs, I studied a variety of law enforcement, criminal investigator, and tax crime issues, including search and seizure. Through my training and experience, I have become familiar with the types of records businesses typically maintain in the course of their regular activity, including ledgers, journals, invoices, receipts, and bank documents. A large part of my duties as an IRS-CI Special Agent involve analyzing these types of records to determine the existence of criminal activity and to develop evidence of criminal activity.

3) Before becoming a Special Agent with IRS-CI, I was a Revenue Agent with the IRS for three years. Prior to working for the IRS, I was employed with Plante & Moran, PLLC and SeberTans, PLC as a Staff Accountant and Tax Senior, respectively for a total of four and a half years. In my capacities in the IRS and public accounting, I prepared and audited numerous individual, corporate, and partnership tax returns. I was frequently involved in large audits which required the analysis and review of accounting records, bank statements, employment records, and other financial documents. In addition to my practical experience in tax accounting gathered through employment, I hold a Master of Science degree in Taxation from Grand Valley State University, a Master of Science in Accountancy degree from Western Michigan University and a Bacheolor of Arts degree in Economics from Kalamazoo College.

4) In the course of my employment as a Special Agent, I have conducted and assisted in numerous investigations of alleged criminal violations of the Internal Revenue laws pursuant to tax evasion, failure to file federal income tax returns, subscribing to false

federal income tax returns, aiding and abetting in the filing of false federal income tax returns, conspiracy to file false claims against the government and other violations.

## AFFIANT'S KNOWLEDGE

5) Except as otherwise noted, the information contained in this affidavit is based upon the personal knowledge of the affiant. This affidavit is also based on, among other things, my training and experience in conducting financial and other investigations, my personal knowledge, my review of documents, public records and other evidence, and conversations with other law enforcement agents, including other experienced IRS-CI agents.

6) This affidavit is submitted solely for the purpose of establishing probable cause to support the issuance of an arrest warrant and does not set forth all facts and circumstances known to me or to other investigators regarding this matter. All information contained in this affidavit is known to be true and correct to the best of my knowledge.

7) I believe that the facts described below establish probable cause that in the Eastern Judicial District of Pennsylvania, D. Erik Von Kiel, also known as Dennis W. Fluck ("Dr. Von Kiel"), has committed multiple federal crimes, including but not limited to: conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and attempting to evade or defeat federal taxes, in violation of 26 U.S.C. § 7201.

## BACKGROUND

8) Dr. Von Kiel is a doctor of osteopathy (DO) who at all times relevant to this affidavit resided and practiced medicine in Lehigh County and elsewhere in the Eastern District of Pennsylvania.

9) From approximately March 1989 until August 2013, Dr. Von Kiel's medical practice included providing medical services to inmates at the Lehigh County Prison ("LCP") in Allentown, Pennsylvania. He worked as an independent contractor from 1989 until 2001, unaffiliated with any corporate entity. From approximately 2001 until approximately 2004, Dr. Von Kiel provided the same services at LCP as an independent contractor for Wexford Health Services.

10) In 2004, a new company, PrimeCare Medical, Inc. ("Primecare"), obtained the contract to provide medical services to LCP. Primecare hired Dr. Von Kiel to be its "Medical Director" at LCP and other prisons. At first, Dr. Von Kiel was hired as an independent contractor, but on or about February 22, 2005, he signed an employment contract with Primecare

11) Dr. Von Kiel, using his birth name Dennis Fluck, graduated from Philadelphia College of Osteopathic Medicine in 1988. Dr. Von Kiel financed his medical education with Health Education Assistance Loans ("HEAL"), insured by the federal government under the Public Health Service Act, 42 U.S.C. § 292f-p.

12) Some of his HEAL loans were originally financed by First Eastern Bank and First American Bank and then purchased by the Student Loan Marketing Association ("Sallie Mae"). Other HEAL loans were held by the Pennsylvania Higher Education Assistance Agency ("PHEAA"). Dr. Von Kiel made some payments on his HEAL loans but he ultimately defaulted on all of them.

13) In 1999, the PHEAA obtained a default judgment against Dr. Von Kiel (under the name of Dennis W. Fluck) in the Lehigh County Court of Common Pleas in Lehigh County, Pennsylvania, in the amount of approximately $29,008.36, plus interest. The PHEAA filed an insurance claim against the United States Department of Health and Human Services ("HHS"), which paid the claim. PHEAA then assigned the default judgment against Dr. Von Kiel to HHS.

14) In 2000, Sallie Mae obtained a default judgment against Dr. Von Kiel (as Fluck) in the Lehigh County Court of Common Pleas in Lehigh County, Pennsylvania, in the amount of approximately $132,185.27, plus interest. The PHEAA filed an insurance claim against HHS, which paid the claim. Sallie Mae assigned its default judgment against Dr. Von Kiel to HHS.

15) HHS registered both default judgments with the United States District Court for the Eastern District of Pennsylvania on September 19, 2002.

## THE CONSPIRACY TO DEFRAUD THE UNITED STATES

16) Dr. Von Kiel has spent more than a dozen years conspiring with other persons to defraud both the HHS and the IRS, largely by pretending to be an impoverished minister with no assets or income, even as he received annual salaries that sometimes exceeded $200,000.

17) The conspiracy started no later than 2001 when Dr. Von Kiel, with the help of co-conspirators, purported to become a minister of a Utah-based religious organization called the "International Academy of Lymphology" ("IAL") and take a "vow of poverty," in which he allegedly renounced any interest in real or personal property or current and future income.

18) In 2005, Dr. Von Kiel submitted an IRS Form W-4, *Employee's Withholding Allowance Certificate* to Primecare where he wrote "Exempt" on Line 7 claiming he was exempt from federal income tax withholdings. Instructions to Line 7 states, "I claim exemption from withholding for 2005, and I certify that I meet **both** of the following conditions for exemption: 1) Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability, **and** 2) This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability." He also directed Primecare to deposit his bi-weekly wages directly into bank accounts controlled by IAL. Once the money arrived in those bank accounts, one of Dr. Von Kiel's co-conspirators would transfer nearly the same amount of money into a Pennsylvania bank account controlled by Dr. Von Kiel.

19) In 2006, Dr. Von Kiel became the sole signatory on bank accounts established for TLM True Life Ministries ("TLM"), an entity established by one of Dr. Von Kiel's co-conspirators. Every pay period, Primecare deposited Dr. Von Kiel's wages directly into an account controlled by IAL. Around the same time, IAL wired approximately the same amount of funds into the TLM account. Dr. Von Kiel then had full and sole discretion to use that money however he wished, just as he would have, if Primecare had deposited his salary directly into his bank account, instead of using the IAL account as an intermediary.[1] Dr. Von Kiel used the TLM account to pay all of his family's day-to-day

---

[1] Sometime around 2006 or 2007, Dr. Von Kiel's "church" changed its name to the International Academy of Life. In or around 2011, there was another name change to the Christian Forum Assembly Church ("CFAC"). Whatever its name, Dr. Von Kiel directed Primecare to send his

living expenses and to buy some unusual items such as a batting cage for one son, all while purportedly living under his "vow of poverty."

20) Also in 2006, Dr. Von Kiel took steps to hide his biggest asset from HHS and the IRS. He and his wife, Insa Von Kiel, had jointly purchased a large 7-bedroom home in Macungie, Pennsylvania, and owned it as tenants-by-the-entirety, but in June 2006, they conveyed the house to Mrs. Von Kiel, exclusively, in exchange for $1.

21) In March 2007, Dr. Von Kiel submitted to Primecare an Employee Direct Deposit Authorization Form reflecting a social security number which belonged to another individual. Thereafter, all Forms W-2 for VON KIEL's wages were reported to the IRS under an incorrect social security number.

22) HHS tried to collect on its judgments against Dr. Von Kiel, and in 2010, it obtained an order from Judge Petrese B. Tucker, United States District Judge for the Eastern District of Pennsylvania, authorizing the garnishment of 25 percent of Dr. Von Kiel's net wages from Primecare. Dr. Von Kiel, however, responded by filing a petition for bankruptcy in the Eastern District of Pennsylvania (Docketed at Bankruptcy No. 10-21364), which stayed the garnishment.

23) During an adversary proceeding (Adversary No. 10-2136), Dr. Von Kiel testified under oath that he had no income; that all his wages went directly to IAL; and that he lived entirely on "gifts" provided by the church. Dr. Von Kiel also testified that he and his wife had "separated" in the late 1990s and that he, therefore, had no financial interest in their once-marital house. Dr. Von Kiel, however, admitted that his wife had given birth to three children since their alleged "separation."

24) On January 5, 2012, United States Bankruptcy Judge Richard E. Fehling issued an order and memorandum opinion denying Dr. Von Kiel's petition to discharge his debt to HHS, stating among other things that Dr. Von Kiel's "entire bankruptcy filing was undertaken to circumvent the decision and analysis of District Court Judge Petrese B. Tucker and to

---

wages to the "church" only to have the church immediately wire the funds back to Dr. Von Kiel. IAL has been the subject of multiple investigations. In 2010, a civil injunction suit was filed against IAL Chief Executive Officer Kevin A. Hartshorn to permanently bar him from promoting an alleged false church-based tax fraud scheme. In 2011, IAL Executive Trustee Owen L. Charles was convicted of tax evasion, use of a false social security number, and false statements. He was sentenced to 51 months in jail.

frustrate her orders requiring that Debtor's compensation be garnished to start to repay his substantial educational debts."

25) In or around August 2013, Primecare terminated Dr. Von Kiel's employment because of the investigation into his fraudulent activities.

26) On or about December 26, 2013, Mrs. Von Kiel sold the residence previously conveyed to her by Dr. Von Kiel. The residence was sold to CDA Ventures, LLC for approximately $175,000.00. On December 31, 2013, Dr. Von Kiel and Mrs. Von Kiel took their net proceeds check of $156,745.76 to United Check Cashing in Harrisburg, Pennsylvania. The Von Kiels cashed the check and received the payout, minus a $5,000 commission, in two installments; the first installment was $61,745.76 and received on or about December 31, 2013 while the second installment of $90,000.00 was received on or about January 3, 2014. On both occasions, Dr. Von Kiel handled most of the conversation and carried the money out of the business.

## THE TAX OFFENSES

27) IRS records show that Dr. Von Kiel has not voluntarily filed a federal individual income tax return since the 2000 tax year.

28) Meanwhile, Primecare reported to the IRS that Dr. Von Kiel earned wages of $226,110 in 2008, $218,139 in 2009, $216,012 in 2010, $216,319 in 2011, and $200,719 in 2012.

29) Primecare also issued a Form W-2, *Wage and Tax Statement,* to Dr. Von Kiel for each of these years.

30) No federal income taxes were withheld from any of Dr. Von Kiel's paychecks during that time period because, as stated earlier, Dr. Von Kiel completed and submitted to Primecare a false and fraudulent 2005 Form W-4 claiming he was "Exempt" from Federal income tax withholdings. Dr. Von Kiel completed and submitted another false and fraudulent 2012 Form W-4 on or about January 10, 2012 again claiming he was "Exempt" from Federal income tax withholdings.

31) The IRS has reviewed Dr. Von Kiel's wages for the tax years 2008 through 2012, analyzed the deductions and exemptions he could lawfully have claimed, and calculated that his taxes due and owing for those years is approximately: $54,828 for tax year 2008; $53,758 for tax year 2009; $52,804 for tax year 2010; $50,771 for tax year 2011; and

$44,765 for tax year 2012.  In total, therefore, the IRS estimates that Dr. Von Kiel owes at least $256,926 in unpaid federal taxes for 2008 through 2012.

32) Notably, this figure is based solely on the wages reported by Primecare for those years. There is evidence Dr. Von Kiel received additional compensation during those years that he intentionally refused to report to the IRS, such as $10,000 he received for medical services rendered to The Weston A. Price Foundation during 2009 and 2010 and payments he received from patients he treated in the evenings and on weekends.

## CONCLUSION

1) I believe the aforementioned facts establish probable cause that in the Eastern District of Pennsylvania, D. Erik Von Kiel ("Von Kiel"), also known as Dennis Fluck, has committed multiple federal crimes, including but not limited to: conspiracy to defraud the United States, in violation of 18 U.S.C. § 371, and attempting to evade or defeat federal taxes, in violation of 26 U.S.C. § 7201.  Accordingly, I respectfully request the issuance of an arrest warrant for D. Erik Von Kiel.

2) I also respectfully request that the Court issue an Order pursuant to which the Application and Affidavit for the arrest warrant, and all related papers, be filed under seal.  The information contained in these materials is relevant to an ongoing investigation and premature disclosure of the Application and Affidavit for the arrest warrant and related papers would substantially jeopardize the effectiveness of the investigation and potentially endanger witnesses.

Joseph Carl, Special Agent
Internal Revenue Service
Criminal Investigation

SWORN and subscribed to before me
This 28st day of February, 2014

ELIZABETH T. HEY
United States Magistrate Judge